# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ENGIDASHET W. GEBRE,

    Plaintiff,

    v.

CONDOLEEZA RICE, as Secretary of State, and
DEPARTMENT OF STATE,

    Defendants.

**Civil Action No. 05-11321-WGY**

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Plaintiff, Engidashet W. Gebre ("Plaintiff" or "Mr. Gebre"), an Ethiopian national, filed a complaint in this Court on June 23, 2005, to compel the issuance of an immigrant visa on the basis of the immigrant diversity visa ("DV" or "diversity visa") program. Mr. Gebre was issued an immigrant visa as a diversity applicant on August 20, 2002. During the pendency of Mr. Gebre's application, Tiringo T. Tegebelu, Mr. Gebre's wife, appeared with him and applied for an immigrant diversity visa as his spouse. Her application was denied. Mr. Gebre now requests a mandamus order to issue an immigrant visa to his wife. As explained below, the Defendants ("Defendants" or "government") respectfully move to dismiss pursuant to Fed. R. Civ. P. 12, for failure to state a claim upon which relief can be granted, and lack of jurisdiction due to mootness.

## A. RELEVANT FACTS

1.    Mr. Gebre, an Ethiopian national, entered the DV lottery program for fiscal year 2002, was informed that he was selected as a potential recipient of an immigrant diversity visa in the diversity visa lottery, and he applied for a diversity visa. Docket No. 1, Complaint at ¶ 11.

2.      On August 13, 2002, Mr. Gebre and his wife, Tiringo T. Tegebelu, appeared at the U.S.
        Consulate in Addis Ababa, Ethiopia, and his wife applied for a visa as the spouse of a DV
        lottery recipient (not as a selected potential recipient).  Id.

3.      On August 20, 2002, Mr. Gebre was issued a diversity visa at the U.S. Embassy in Addis
        Ababa, Ethiopia.  Exhibit A – Declaration of Jeff Gorsky, Chief, Legal Advisory
        Opinions Division of Visa Office, Bureau of Consular Affairs,  U.S. State Department
        Visa Center ("Gorsky Declaration"), at ¶ 4.

4.      On August 13, 2002, Tiringo T. Tegebelu, was denied a visa because she had not been
        entered as Mr. Gebre's spouse in his application/ petition for DV status.  Gorsky
        Declaration, at ¶ 6; Docket No.1, Complaint at ¶ 14 and Exhibit C.

### B.  APPLICABLE LAW AND REGULATIONS

**1.      The Immigration and Nationality Act ("INA")**

a.      INA § 104(a) (8 U.S.C. §1104(a)) – lists the powers and duties of the Secretary of
        State in the administration and enforcement of the INA and other immigration and
        nationality laws.

b.      INA § 201(e) (8 U.S.C. §1151(e)) – establishes the worldwide level for diversity
        immigrants at 55,000 for each fiscal year.

c.      INA § 203(c)(1) (8 U.S.C. §1153(c)(1)) – provides for the allocation and
        distribution of immigrant diversity visas each fiscal year on the basis of
        determinations made by the Attorney General pursuant to specific criteria and
        procedures that focus on regions of the world and the levels of admissions from
        those regions over time.  See generally Nyaga v. Ashcroft, 323 F.3d 906, 907–909

(11th Cir. 2003).

d.  INA § 203(d) (8 U.S.C. §1153(d)) – provides for diversity immigrant status for a spouse or child of an alien issued a diversity immigrant visa, if not otherwise entitled to immigrant visa status and if accompanying or following to join the spouse or parent.

e.  INA § 203(e)(2) (8 U.S.C. §1153(e)(2)) – states that immigrant visa numbers made available under § 203(c) for diversity immigrants shall be issued to eligible qualified immigrants strictly in a random order established by the Secretary of State for the fiscal year involved.

f.  INA § 204(a)(1)(I)(ii)(II) (8 U.S.C. §1154(a)(1)(I)(ii) (II)) – provides that aliens who qualify, through random selection, for a visa under section § 203(c) shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected.

**2.    Department of State INA Implementing Regulations**

a.  22 CFR 42.33(b)(1) Petition for consideration/ form of petition.  An alien claiming to be entitled to compete for consideration under INA § 203(c) shall file a petition for such consideration. The petition shall include:(I) the petitioner's name; (ii) date and place of birth (including city and county of which the alien claims to be a native, if other than the country of birth; (iii) name(s), and date(s) and place(s) of birth of spouse and all child(ren), if any, (including legally-adopted and stepchildren, regardless of whether or not they are living with the petitioner or intend to accompany or follow to join the petitioner).

3

c.     22 CFR 42.33(d) - Validity of approved petitions.  A petition approved pursuant

to paragraph (c) of this section shall be valid for a period not to exceed midnight

of the last day of the fiscal year for which the petition was submitted.  At that

time, the Department of State will consider approval of the petition to cease to be

valid pursuant to INA § 204(a)(1)(I)(ii)(II), which prohibits issuance of visas

based upon petitions submitted and approved for a fiscal year after the last day of

that fiscal year.

d.     22 CFR 42.33(f) - Allocation of visa numbers.  To the extent possible, diversity

immigrant visa numbers will be allocated in accordance with INA § 203(c)(1)(E)

and will be allotted only during the fiscal year for which a petition to accord

diversity immigrant status was submitted and approved.  Under no circumstances

will immigrant visa numbers be allotted after midnight of the last day of the fiscal

year for which the petition was submitted and approved.

3.     **Department of State Foreign Affairs Manual (FAM)**[1]

a.     9 FAM 42.33 Note 5.2-1 – Petition/Application Validity.  Under the law, persons

registered as diversity immigrants are entitled to apply for visa issuance only

during the fiscal year for which the application was submitted.  There is no carry-

over of benefit into another year for persons who do not receive a visa during the

fiscal year for which they registered.  Following-to-join derivative visas must be

issued during the same fiscal year as that of the principal beneficiary.

---

[1]     http://foia.state.gov/masterdocs/09FAM/0942033N.PDF

## C.  STANDARD OF REVIEW

In evaluating a motion to dismiss the district court should construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff.  Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998).  However, federal jurisdiction is never presumed and the plaintiff must carry the burden of demonstrating the existence of federal jurisdiction.  Id.; see also Heinrich v. Sweet, 44 F.Supp. 2d 408, 412 (court may consider motion to dismiss as one for summary judgment and may consider evidence outside the pleadings to determine jurisdiction).

## D.  ARGUMENT

### 1.    The Visa Was Properly Denied

The diversity visa regulations in effect at the time Mr. Gebre applied for the program expressly required the applicant's spouse to be listed on the application/petition "whether or not they are living with the petitioner or intend to accompany or follow to join the petitioner."  22 CFR 42.33(b)(1).  The reason for this requirement is that there is a significant problem with fraudulent claims to derivative status in the diversity visa program.  This is a particularly difficult issue in countries that do not have reliable systems of civil documentation, and where it is therefore easy to fraudulently document through predated forms false claims to marriage or children.  Gorsky Declaration, at ¶ 7.

In order to address this problem, the State Department instituted a requirement that all potential family members be listed on all diversity visa applications.  22 CFR 42.33(b)(1) requires, in pertinent part, as follows for diversity visa petitions:

(I) The petitioner's name;
(ii) Date and place of birth (including city and county of which the alien claims to be a

native, if other than the country of birth;
(iii) Name(s), and date(s) and place(s) of birth of spouse and all child(ren), if any, (including legally-adopted and stepchildren, regardless of whether or not they are living with the petitioner or intend to accompany or follow to join the petitioner);
. . . .
22. CFR 42.33(b)(1).

This requirement that all family members be listed on the application was clearly stated on the public notice and instructions for the DV-2002 visa program which are provided to the randomly selected lottery applicants, such as Mr. Gebre.  Exhibit B, Federal Register, Vol. 65, No. 147, Monday July 31, 2000, Page 46757 (these notices are widely disseminated at all appropriate U.S. foreign embassies, on the internet, and through other means, as is evidenced by the large number of applications received and processed); see also Nyaga v. Ashcroft, 323 F.3d 906, 908 (11th Cir. 2003).  This notice described in the section "Completing the Entry" information that had to be placed on the petition, and included the following instruction:  "4. Name, Date and place of Birth of the Applicant's Spouse and Children (if any) (Failure to provide all of this information will disqualify the applicant)."  Id.; Gorsky Declaration, at ¶ 7.

Mr. Gebre was required by regulation to list his spouse and other relevant information on his DV application/petition, and his failure to do so lead to her disqualification for status.[2] Complaint at ¶ 14 and Exhibit C; Gorsky Declaration, ¶¶ 3–7.

## 2.    Mootness

Even if the Plaintiff was able to establish that Tiringo T. Tegebelu's application was submitted, it was not approved within the fiscal year for which visas were allotted and there is no

---

[2]    There is no requirement that the State Department inform an applicant of a denial or that the applicant was not selected.  See Exhibit B, Federal Register, Vol. 65, No. 147, Monday July 31, 2000, Page 46759 ("**Notifying Winners** – Only successful entrants will be notified. . . . Persons not selected will NOT be notified. . . . .").

longer a legal basis for visa issuance.

The statutory basis of the Diversity Visa lottery program requires that all visas be processed within the fiscal year of that program.[3]  With respect to Ms. Tegebelu's application, that fiscal year ended September 30, 2002.  Thus, the application is moot since the relief sought is unavailable because Congress has provided, in INA §204(a)(1)(I)(ii)(II), that eligibility for a Diversity Visa lasts only through the end of the specific fiscal year for which an alien was selected.  8 U.S.C. §1154(a)(1)(I)(ii) (II); see also 22 CFR 42.33(d); 22 CFR 42.33(g); 9 FAM 42.33 Note 5.2-1.

As the court stated in Iddir v. INS:

---

[3]     The administration of the diversity visa program demonstrates that the program requires processing within the appropriate fiscal year.  After the Attorney General has made the determinations relative to previous preference numerical limitations, high and low-admission regions and states, and other numerical criteria for diversity visas, pursuant to INA §203(c)(1), 8 U.S.C. § 1153(c)(1), there is an announcement of low admission states whose natives may compete for diversity visas to be issued during the next fiscal year.  The Department of State's Visa Office specifies the time and place for submitting, by regular mail, petitions that conform to 22 CFR 42.33(b)(1), 9 FAM 42.33 Note 5.1, 9 FAM 42.33 Procedural Note 2.1, the Fiscal Year Program Notice in the Federal Register, and the Instructions for the Fiscal Year Program.  From among those petitions that are received at the designated place by the petition deadline and appear to conform to the established requirements (e.g. indication that alien is a native of or chargeable to a diversity country and possesses qualifying education or its equivalent), the Department of State randomly selects a certain number of entries for consideration for diversity visa numbers.  Those selectees who are already present in the United States in nonimmigrant status are eligible to apply to adjust status to lawful permanent resident during the fiscal year of the applicable Diversity Visa Program, subject to applicable numerical limitations.  Those selectees who are outside the United States are eligible to apply for immigrant visas during that period, subject to the same numerical limitations.  Thus, persons who claim to have "won" the visa lottery have no entitlement to a visa and, in fact, the program is conducted on the assumption that some qualified "winners" will not receive visa numbers due to an inability to complete the application process by the deadline prescribed by law.  The program makes no distinction among petitioners based on the reasons why the process cannot be completed.  All persons are treated the same regardless of whether processing delays are attributed to the applicant, the government, or events beyond either's control.  See generally Nyaga v. Ashcroft, 323 F.3d 906, 907–909 (11th Cir. 2003).

The United States Constitution limits this Court's jurisdiction to live cases and controversies. A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. Where a case is moot, it must be dismissed as non-justiciable. (citations omitted)

166 F.Supp.2d 1250, 1258-59 (N.D. Ill. 2001), quoting Stotts v. Community Unit School District

No. 1, 230 F.3d 989, 991, (7th Cir. 2000). Iddir was a mandamus action brought by aliens

selected through the Diversity Visa program who were not interviewed regarding their

applications to adjust from nonimmigrant status pursuant to INA § 245(i) until after the end of

the fiscal year for which they had been selected. The Court found that the fact that the fiscal

year had ended

means that plaintiffs are no longer eligible to receive visas. This renders the case moot, because the INS cannot issue visa numbers that do not exist to plaintiffs. See Zapata v. INS, 93 F.Supp.2d 355, 358 (S.D.N.Y. 2000) ("The plain meaning of §1154 is that after the fiscal year has ended on September 30, no diversity visas may be issued nunc pro tunc based on the results of the previous fiscal year's visa lottery."); El Hindi v. Mc Elroy, 2000 WL 1053873 (S.D.N.Y. July 31, 2000); Sadowski v. INS, 107 F.2d 451, 454 (S.D.N.Y. 2000) ("Where a relevant deadline for adjustment of status has passed, a request for relief is plainly moot, depriving district courts of subject matter jurisdiction.").

166 F.Supp.2d at 1259.

In Iddir, the Court distinguished two previous decisions in the same district (cited by the

plaintiffs) in which orders for adjustment of status were entered despite the expiration of the

fiscal year, and which merit some explanation in the context of the instant action.

The Iddir court pointed out that Paunescu v. INS, 76 F.Supp.2d 896 (N.D. Ill. 1999)

involved active failure to complete an already initiated application process by the Immigration

and Naturalization Service ("INS")[4] and that the plaintiff had initiated his challenge prior to the

---

[4]    Now the Citizenship and Immigration Service of the Department of Homeland Security.

end of the fiscal year.  166 F.Supp.2d at 1259.  There was no such similar initiated process on the part of the Department of State, nor was there any contemporaneous challenge in this action. More directly distinguishable from the instant action, the court in <u>Paunescu</u> had issued a preliminary injunction ordering the INS to adjudicate the adjustments for the lottery selectee and his spouse before the end of the fiscal year, but the INS failed to do so.  There are no such circumstances in this action.

In <u>Marcetic v. INS</u>, 1998 WL 173129 (N.D. Ill. April 6, 1998) The INS defended the denial of derivative spouse permanent resident status to the plaintiff based on the fact that no visa had been issued before the end of the 1996 fiscal year.  In ordering the INS to grant the visa (and a work visa or "Green Card"), the court found that the plaintiff had been granted lawful permanent resident status by the INS (by order of an Immigration Judge) within the fiscal year, but due to a bureaucratic error between the State Department and the INS, the visa authorization was never processed.  The trial court ordered the INS to complete processing of the adjustment of status, including issuance of the resident alien card.  <u>Id</u>.  None of these circumstances exist in the instant action.

<u>Iddir</u> was brought by plaintiffs who had not been "granted any determination in their favor by either the INS or any court" that would have required adjustment of status before the end of the fiscal year, and therefore neither of the other two cases applied.  166 F.Supp.2d at 1259.  The court held that Iddir's action was moot, recognizing that immigrant visa numbers could no longer be assigned and any order compelling INS to adjudicate the applications would have been a futile act.  Id. at 1260.

This issue was also addressed by the 11th Circuit Court of Appeals, <u>Nyaga v. Ashcroft</u>,

323 F.3d 906 (11th Cir. 2003).  In Nyaga, the applicant sought  mandamus relief in the form of

an order compelling the Attorney General and the INS to complete immediately all remaining

process necessary to adjudicate his diversity visa application after the end of the fiscal year in

which he applied (1998).  The Court held:

> We agree with the Defendants that the phrase "shall remain eligible to receive
> such visa" plainly means that aliens, like Nyaga, who have been randomly
> selected to qualify for a visa under the diversity visa program cannot be issued a
> visa after midnight of the final day of the fiscal year for which they were selected.
> As of midnight on September 30, 1998, Nyaga was no longer eligible to receive
> an immigrant visa.  The INS's failure to process Nyaga's application does not
> extend Nyaga's statutorily-limited period of eligibility for a diversity visa.
> "Eligible to receive such visa" is unambiguous, and because the phrase is
> unambiguous, our inquiry must end with the statute's plain language. In reaching
> this conclusion based on the statute's plain meaning, we are not alone. See Iddir v.
> INS, 301 F.3d 492, 500-01 (7th Cir.2002) (concluding that even if the INS were
> to adjudicate applications after the fiscal year ended, visas could not be issued);
> id. at 502 (Flaum, J., concurring) (concluding that the plaintiffs are no longer
> eligible to receive visas); Fornalik v. Perryman, 223 F.3d 523, 526 (7th Cir.2000);
> Vladagina v. Ashcroft, 2002 WL 1162426 (S.D.N.Y. Apr. 8, 2002) (unpublished);
> Iddir v. INS, 166 F.Supp.2d 1250, 1259 (N.D.Ill.2001) (holding that "[t]he end of
> fiscal year 1998 was September 30, 1998, which means that plaintiffs are no
> longer eligible to receive visas"), aff'd on other grounds, 301 F.3d 492 (7th
> Cir.2002); Zapata v. INS, 93 F.Supp.2d 355, 358 (S.D.N.Y.2000) ("The plain
> meaning of § 1154 is that after the fiscal year has ended on September 30, no
> diversity visas may be issued nunc pro tunc based on the results of the previous
> fiscal year's visa lottery."); Diallo v. Reno, 61 F.Supp.2d 1361, 1368
> (N.D.Ga.1999).

Nyaga 323 F.3d, at 914-915.

Similarly, the fact that the State Department did not approve or process Ms. Tegebelu's

derivative spouse DV application by the end of fiscal year 2002, does not extend Tegebelu's

statutorily-limited period of eligibility for a diversity visa.[5]

---

[5]    It should also be noted that the diversity visa lottery program is administered on the
basis that more names are selected in the lottery than can receive visas.  INA section 201(e), 8
U.S.C. § 1151(e), allows for 55,000 diversity visa immigrants per fiscal year.  In recognition that

There have been several significant instances in which circumstances precluded otherwise eligible classes of diversity visa applicants from qualifying for adjustment of immigration status. In these cases, Congress provided for a legislative remedy. This reflects Congress' recognition that, absent express legislative authorization, the statutory time limitations preclude any remedy that would permit an allocation of a diversity visa after the end of the fiscal year.

In one instance, a State Department calculation error in the 1995 diversity immigrant visa program led to many more Polish diversity lottery entrants being notified of their eligibility for status than could be accommodated by the per-country numerical limitation. Many of these entrants applied to the INS for adjustment of status, and paid the required fees, without realizing that they had no realistic chance of receiving a visa number under the diversity immigrant visa program. Consequently, in section 637 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. Law No. 104-208, Div. C, Title VI-C, 110 Stat. 3009-546, 3009-704 (Sept. 30, 1996), Congress provided that eligible applicants could receive diversity status during fiscal year 1997, using pre-authorized fiscal year 1997 visa numbers. However, Congress made no special provision to allocate numbers above and beyond those that would be available in FY 1997. This had the effect of increasing competition for visa numbers during the

---

some of the aliens registered do not pursue diversity visas, the Department of State each year notifies approximately twice as many potential applicants of diversity visa eligibility than there are available numbers, to insure that as many applicants as possible can benefit from this program. Thus, the number of lottery "winners" far exceeds the number that can actually receive a visa. The notification letter accordingly notifies applicants that the notification does not guarantee the applicant will be able to qualify for status in time: "Selection does NOT guarantee that you will receive a visa because the number of applicants selected is greater than the number of visas available." Federal Register, Vol. 65, No. 147, Monday July 31, 2000, Page 46757; see also Nyaga v. Ashcroft, 323 F.3d 906, 908 (11th Cir. 2003).

1997 program.

In another instance, pursuant to Public Law 105-360, § 1, 112 Stat. 3276 (Nov. 10, 1996), Congress provided that aliens scheduled for diversity visa interviews at the United States Embassies in Nairobi, Kenya and Dar Es Salaam, Tanzania, between August 6, 1998, and October 1, 1998, who were unable to undergo interviews because visa services were suspended as a result of the bombings of the U.S. Embassies in those countries, could be processed for a diversity visa in the next fiscal year, i.e., Fiscal Year 1999.  The congressional enactment also allowed for the designations of other places which may have had immigrant processing suspended as a result of the bombings.  As in the case of the Polish applicants, Congress provided that diversity visa numbers would be charged against a subsequent fiscal year's program - in this case, the Fiscal Year 1999 program - and not against the allotment for the fiscal year program through which the applicants had been selected.  Congress did so even though there were leftover diversity immigrant visas for fiscal year 1998.

Most recently, the PATRIOT Act of 2001, Public Law 107-56, § 422(c), 115 Stat. 272 (Oct. 26, 2001), provided relief for aliens who were prevented, as a direct result of the events of September 11, 2001, from using an immigrant visa number that had been issued to them prior to October 1, 2001, under the diversity visa program for Fiscal Year 2001, as well as the spouses and children of aliens who had been issued an immigrant visa number under the diversity visa program before dying as a direct result of the events of September 11, 2001.  The provision allowed such individuals to use the visa number, which had been assigned for their use before the end of the fiscal year, to enter the United States as a lawful permanent resident, or to adjust to that status, during the period from October 1, 2001 to April 1, 2002.  As in the earlier 1995 and 1998 acts, Congress did not authorize the issuance of additional visa numbers from an

unused allotment for the expired fiscal year.  The legislation provided for the counting of such aliens as diversity immigrants, for purposes of INA §203(c), for Fiscal Year 2001, unless the worldwide level had been exceeded, in which case they would be counted as diversity immigrants for Fiscal Year 2002.  The Act offered no relief for any diversity visa lottery winners and family members who had not been issued immigrant visa numbers before the end of the fiscal year, even if the events of September 11, 2001, directly prevented them from obtaining an immigrant visa number before October 1.

Another example of congress' intent to rigidly adhere to the fiscal year limits on the diversity immigrant visa program is provided by Senate Bill 452, a private bill introduced to the Committee on the Judiciary on February 24, 1999, and reported to the Senate on August 5, 1999, which would grant immigrant status to Ms. Belinda McGregor, who had applied for a diversity immigrant visa, and adjustment of status, in 1995.  Most telling is a statement made by Senator Hatch supporting the bill, in which the Senator claimed that Ms. McGregor had been denied a diversity visa in 1995 because of a processing error by the Visa Center.  Senator Hatch expressly recognized that there is no available remedy for a diversity visa applicant to adjust status after the close of the fiscal year, other than a private bill, stating: "Unfortunately, the Center does not have the legal authority to rectify its own mistake by simply granting Ms. McGregor a visa out of a subsequent year's allotment.  Thus, a private relief bill is needed in order to see that Ms. McGregor gets the visa to which she was clearly entitled in 1995."  See 145 Cong. Rec. S1926-02, S1927 (Feb. 24, 1999); see also id. ("The only way to provide relief is through Congressional action.").

Another private bill, H.R. 3414, for the relief of Luis A. Leon-Molina and his family, was introduced by Representative Hyde in the 106th Congress, 2d Session.  The bill would deem the

family to have been selected for a diversity immigrant visa for Fiscal Year 2001. Report 106-892, to accompany the private bill, stated that Leon-Molina was a diversity visa applicant for Fiscal Year 1996 whose application for adjustment of status was mistakenly misplaced as a result of the Federal Government shutdown on December 16, 1995. The private bill's provision for Fiscal Year 2001 eligibility for a DV-96 applicant, even though the congressional report found that the situation was a consequence of government error, reflects congressional recognition that no DV program visa numbers can be allotted after the end of a fiscal year.

These examples confirm that even when there are exigent circumstances attributable not to the applicant but instead to government error or actions of third parties, there is unfortunately no remedy for an otherwise qualified diversity visa applicant who could not receive a visa number during the fiscal year to obtain a diversity visa after the fiscal year has ended. The fact that in these examples Congress directed the visa numbers to come from the subsequent current fiscal year even though there were numbers remaining at the end of the fiscal years in question demonstrate that Congress does not intend diversity visa numbers to remain available to persons who cannot receive a number by the end of the fiscal year of the particular diversity visa program, even if that unavailability is because of events beyond their control.

The ability of the State Department to administer the lottery in an orderly way consistent with its understanding of congressional intent would be seriously compromised if persons who were not issued visa numbers by the end of the particular fiscal year were able to circumvent the program by obtaining court orders, despite the congressional mandate that diversity visas be allocated before the end of the fiscal year and the express notice given to every diversity visa applicant that his or her potential visa eligibility would expire at the end of the fiscal year. In any event, in administering the program, the State Department guarantees no entrant that he or

she will obtain a visa, and the only equity such an entrant can point to is his or her mere

notification that, through a random drawing, he or she may be eligible to obtain immigrant

status.

## E.  CONCLUSION

Based on the foregoing, the government respectfully requests that this Motion to Dismiss

be granted pursuant to Fed. R. Civ. P. 12, for failure to state a claim upon which relief can be

granted, and lack of jurisdiction due to mootness.

Respectfully submitted,

UNITED STATES OF AMERICA

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Anton P. Giedt 4/14/2006
Anton P. Giedt
Assistant U.S. Attorneys
1 Courthouse Way
Boston, MA 02210
617-748-3309 (Voice)
617-748-3967 (Fax)
anton.giedt@usdoj.gov

---

**LOCAL RULE 7.1(A)(2) CERTIFICATION**

Undersigned counsel certifies that pursuant to the requirements under Local Rule 7.1(A)(2), he has conferred with Plaintiff's counsel in an effort to resolve the issues addressed in this motion.

/s/ Anton P. Giedt
Anton P. Giedt
Assistant U.S. Attorney

---

15

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                                    Boston, Massachusetts
                                                               DATE: April 14, 2006

    I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon the
Plaintiff's counsel of record through Electronic Filing.

                                                    /s/ Anton P. Giedt
                                                    Anton P. Giedt
                                                    Assistant U.S. Attorney

16

# EXHIBIT  A

# DECLARATION OF JEFFREY GORSKY



**United States Department of State**

*Washington. D.C.   20520*

I, Jeffrey Gorsky, hereby declare that:

1. I am the Chief of the Legal Advisory Opinions Division of the Visa Office, Bureau of Consular Affairs, U.S. Department of State.  I have held this office since 1998.

2. I have regular access to the Consolidated Consular Database (CCD) as part of the normal functions of my position.  This database contains records of every application for an immigrant or nonimmigrant visa, including applications for the diversity immigrant visa, whether the application is approved or denied (the database contains all applications since at least the year 2000).

3. I searched this database, and it shows that Mr. Engidashet Wolde Gebre was entered into the DV lottery as a Prinicipal Applicant (PA), as evidenced by the Case ID NO. 2002AF26799 and his name entered on the IV Case Applicant Lookup Detail (Attachment A to this Declaration).

4. Mr. Gebre was issued a diversity visa (DV1) on August 20, 2002, as evidenced by the data entries in the Occupation, "Adjud" (Adjudication) Date, and Issuance Date sections of the IV Case Applicant Lookup Detail (Attachment A to this Declaration).

5. Tegeybelu, Tiringo Tibebu, applied for a diversity visa as the spouse of PA Gebre, as evidenced by the data entries in the Applicant Name and Relationship sections of the IV Case Applicant Lookup Detail (Attachment B to this Declaration).

- 2 -

1

2

3    6.  Tegeybelu, Tiringo Tibebu, was refused a diversity visa on August 13, 2002,

4    because the record indicates that the PA, Mr. Gebre, did not enter the requisite

5    data with respect to Tegeybelu, Tiringo Tibebu on his diversity visa application.

6    This is evidenced by the text "NOT ON ENTRY, APPROVE PA ONLY, entered

7    in the Anotation Text section of the IV Case Applicant Lookup Detail

8    (Attachment B to this Declaration).

9    7.  Entry of all family information on the PA's application is critical because of the

10    risk of fraudulent claims in the diversity program.  This is particularly so in

11    countries, like Ethiopia, where there are not reliable systems of civil

12    documentation and where the risk of fraudulent documentation is high.  For that

13    reason, the DV regulations require that all derivative family members be listed on

14    the DV petition.

15  8.  I have confirmed that I have contacted the U.S. Embassy in Addis Ababa, and the

16    Embassy affirmed that there are no other records available relating to these

17    individuals and their particular diversity visa applications.

18

19  Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true

20  and correct.

21

22  Executed by: _____ on: _____

23        Jeffrey Gorsky        April 14, 2007

**ATTACHMENT A TO DECLARATION OF JEFFREY GORSKY**



*The United States Department of State - Bureau of Consular Affairs*

## IV Case Applicant Lookup Detail

*Report by GORSKYJH on April , 14TH 2006 09:46 ET*

---

*Sensitive But Unclassified (SBU) - Information Protected under INA 222(f) and 9 FAM 40.4*

---

**Case ID:** 2002AF26799
**PA Name:** GEBRE , ENGIDASHET WOLDE

---

## Applicant

|  |  |  |  |
|---|---|---|---|
| **Applicant Name:** | Gebre, Engidashet Wolde | | |
| **Relationship:** | Principal Applicant | | |
| **Applicant Status:** | Locked | **Adjud Status:** | Issued |
| **Gender:** | Male | **DOB:** | 15-MAY-1970 |
| **POB Country:** | Ethiopia | | |
| **POB City:** | Awajo | | |
| **POB Region:** | | | |
| **FSC:** | Ethiopia (ETH) | | |

|  |  |  |  |
|---|---|---|---|
| **Occupation:** | SERVICE OCCUPATIONS | | |
| **Accompany/Join:** | Accompanying PA | **Previous INS #:** | |
| **Adjud Date:** | 20-AUG-2002 | | |
| **Visa Class:** | INVALID/INACTIVE (DV1) | | |
| **Issuance Date:** | 20-AUG-2002 | | |
| **Visa Form Number:** | 48064448 | **A Number:** | 55061978 |
| **Fingerprint 1:** | | **Fingerprint 2:** | |

## Clearance List

1

|  |  |  |  |
|---|---|---|---|
| **Clearance Type:** | FBI name check | | |
| **Request Date:** | 02-JUL-2002 | **Receipt Date:** | |
| **Response:** | No record | **Follow-up Date:** | |
| **Destination Text:** | | | |

## Namechecks

**NC 1:**

|  |  |  |  |
|---|---|---|---|
| **Status:** | RECEIVED | **Source:** | CLASS |
| **Hit Count:** | 0 | **Worst Hit:** | No hit |
| **DNC CD Date:** | 12-AUG-2002 | **Enter Date:** | 12-AUG-2002 11:56 |

**NC 2:**

|  |  |  |  |
|---|---|---|---|
| **Status:** | RECEIVED | **Source:** | CLASS |
| **Hit Count:** | 0 | **Worst Hit:** | No hit |
| **DNC CD Date:** | 14-AUG-2002 | **Enter Date:** | 14-AUG-2002 14:49 |

**NC 3:**

|  |  |  |  |
|---|---|---|---|
| **Status:** | RECEIVED | **Source:** | CLASS |
| **Hit Count:** | 0 | **Worst Hit:** | No hit |
| **DNC CD Date:** | 14-AUG-2002 | **Enter Date:** | 14-AUG-2002 15:09 |

| NC 4: | **Status:** | RECEIVED | **Source:** | CLASS |
|---|---|---|---|---|
| | **Hit Count:** | 0 | **Worst Hit:** | No hit |
| | **DNC CD Date:** | 14-AUG-2002 | **Enter Date:** | 14-AUG-2002 15:10 |

| NC 5: | **Status:** | RECEIVED | **Source:** | CLASS |
|---|---|---|---|---|
| | **Hit Count:** | 0 | **Worst Hit:** | No hit |
| | **DNC CD Date:** | 14-AUG-2002 | **Enter Date:** | 14-AUG-2002 15:10 |

| NC 6: | **Status:** | Sent | **Source:** | N |
|---|---|---|---|---|
| | **Hit Count:** | | **Worst Hit:** | |
| | **DNC CD Date:** | | **Enter Date:** | 19-AUG-2002 08:03 |

| NC 7: | **Status:** | RECEIVED | **Source:** | CLASS |
|---|---|---|---|---|
| | **Hit Count:** | 0 | **Worst Hit:** | No hit |
| | **DNC CD Date:** | 20-AUG-2002 | **Enter Date:** | 20-AUG-2002 14:44 |

**ATTACHMENT B TO DECLARATION OF JEFFREY GORSKY**



**The United States Department of State - Bureau of Consular Affairs**

## IV Case Applicant Lookup Detail

*Report by GORSKYJH on April , 14TH 2006 09:46 ET*

---

*Sensitive But Unclassified (SBU) - Information Protected under INA 222(f) and 9 FAM 40.4*

---

**Case ID:** 2002AF26799
**PA Name:** GEBRE , ENGIDASHET WOLDE

---

## Applicant

IMAGE NOT AVAILABLE

| | | | |
|---|---|---|---|
| **Applicant Name:** | Tegeybelu, Tiringo Tibebu | | |
| **Relationship:** | Spouse of Principal Applicant | | |
| **Applicant Status:** | Open | **Adjud Status:** | Refused |
| **Gender:** | Female | **DOB:** | 16-JAN-1977 |
| **POB Country:** | Ethiopia | | |
| **POB City:** | Addis Ababa | | |
| **POB Region:** | | | |
| **FSC:** | Ethiopia (ETH) | | |

| | | | |
|---|---|---|---|
| **Occupation:** | PRECISION PRODUCTION/CRAFT/REP | | |
| **Accompany/Join:** | Accompanying PA | **Previous INS #:** | |
| **Adjud Date:** | | | |
| **Visa Class:** | INVALID/INACTIVE (DV2) | | |
| **Issuance Date:** | | | |
| **Visa Form Number:** | | **A Number:** | 55061979 |
| **Fingerprint 1:** | | **Fingerprint 2:** | |

## Clearance List

1

| | | | |
|---|---|---|---|
| **Clearance Type:** | FBI name check | | |
| **Request Date:** | 02-JUL-2002 | **Receipt Date:** | |
| **Response:** | No record | **Follow-up Date:** | |
| **Destination Text:** | | | |

## Refusals

Refusal 1:

| | | | |
|---|---|---|---|
| **Grounds:** | LABOR CERTIFICATION | | |
| **Section of Law:** | 212(A)(5)(A) | | |
| **Refusal Code:** | 5A | **Refusal Date:** | 13-AUG-2002 |
| **Overcome/Waiver?** | | **Approval Date:** | |
| **Annotation Text:** | NOT ON ENTRY, APPROVE PA ONLY | | |

## Namechecks

| | | | | |
|---|---|---|---|---|
| **NC 1:** | **Status:** | RECEIVED | **Source:** | CLASS |
| | **Hit Count:** | 0 | **Worst Hit:** | No hit |
| | **DNC CD Date:** | 12-AUG-2002 | **Enter Date:** | 12-AUG-2002 11:56 |
| **NC 2:** | **Status:** | RECEIVED | **Source:** | CLASS |

IV Case Applicant Lookup Detail

|        |               |             |             |                    |
|--------|---------------|-------------|-------------|--------------------|
|        | Hit Count:    | 0           | Worst Hit:  | No hit             |
|        | DNC CD Date:  | 12-AUG-2002 | Enter Date: | 12-AUG-2002 11:59  |
| NC 3:  | Status:       | RECEIVED    | Source:     | CLASS              |
|        | Hit Count:    | 0           | Worst Hit:  | No hit             |
|        | DNC CD Date:  | 12-AUG-2002 | Enter Date: | 12-AUG-2002 11:59  |
| NC 4:  | Status:       | RECEIVED    | Source:     | CLASS              |
|        | Hit Count:    | 1           | Worst Hit:  | 2                  |
|        | DNC CD Date:  | 14-AUG-2002 | Enter Date: | 14-AUG-2002 15:09  |
| NC 5:  | Status:       | RECEIVED    | Source:     | CLASS              |
|        | Hit Count:    | 1           | Worst Hit:  | 2                  |
|        | DNC CD Date:  | 14-AUG-2002 | Enter Date: | 14-AUG-2002 15:10  |
| NC 6:  | Status:       | RECEIVED    | Source:     | CLASS              |
|        | Hit Count:    | 1           | Worst Hit:  | 2                  |
|        | DNC CD Date:  | 14-AUG-2002 | Enter Date: | 14-AUG-2002 15:10  |