UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
C. A. NO. 05-11321-WGY

|  |  |
|---|---|
| ENGIDASHET W. GEBRE, | ) |
| Plaintiff, | ) |
| vs. | ) |
| CONDOLEEZA RICE, as Secretary of State, and DEPARTMENT OF STATE, | ) |
| Defendants. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Mr. Gebre, by and through his undersigned counsel, files this Opposition to the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted ("Motion to Dismiss"), and states as follows:

**I.
SUMMARY OF THE OPPOSITION**

Mr. Gebre seeks injunctive relief in the form of a writ of mandamus to compel Defendants to perform their duty to act upon Mr. Gebre's spouse's Application for an immigrant visa ("Application"), which should have been granted when it was properly filed on August 13, 2002. In their Motion to Dismiss, it appears that Defendants assert that the Mr. Gebre's claim should be dismissed: (i) under Fed. R. Civ. P.12(b)(1) for lack of subject matter jurisdiction due to mootness and (ii)under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

For the reasons outlined below, the Defendants' assertions are incorrect both as a matter of law and as a matter of fact, and therefore their Motion to Dismiss must be dismissed in its entirety.

## II.
## DEFENDANTS' MOTION TO DISMISS IS UNTIMELY

Mr. Gebre asserts that Defendants' motion is in direct contravention of this Honorable Court's Order. Rule 16(b) of the Federal Rules of Civil Procedure states in pertinent part that "a [court's case management] Schedule shall not be modified except upon a showing of good cause." Emphasis added. Pursuant to this Court's Case Management Scheduling Order, entered on 11/15/2005, Doc. 6, all "dispositive motions" were due in Court by April 7, 2006. Defendants' Motion was filed with this Court on April 14, 2006. Documents 7 and 8. Therefore, the Motion is untimely and should be denied.

## III.
## FACTUALLY, DEFENDANTS' ASSERTIONS ARE INACCURATE

In their Motion, Defendants argue that Mrs. Tiringo T. Tegebelu, the wife of Mr. Gebre, should have been listed on his application for Diversity Lottery when he applied in the year 2000. The Memorandum states:

> Mr. Gebre was required by regulation to list his spouse and other relevant information on his DV application/petition, and his failure to do so lead to her disqualification for status.

Def. Mem.P.6.

The fact is, however, that Mr. Gebre married his wife on April, 21, 2001, more than a year after he applied for entry in the diversity Lottery, and therefore he could not have listed her as his wife. See **Exhibit A.**

Moreover, as the argument below establishes, there was no legal prohibition against marrying and subsequently listing one's spouse on the petition so long as the Defendants were informed prior to the issuance of a visa. When Mr. Gebre and his wife appeared for an interview on August 13, 2002, they had already informed the Defendants of their marriage.

## IV.
## CONTRARY TO THE DEFENDANTS' ASSERTIONS, THIS COURT HAS JURISDICTION TO HEAR MR. GEBRE'S' CLAIM

To bring this action, Mr. Gebre invokes jurisdiction under several statutes including 28 USC §1331, 8 USC §1361, 8 USC §1329, and 5 USC §702. It is noteworthy that Defendants fail to make any legal argument concerning the jurisdiction of the Federal Court on this matter. In fact, they fail to even argue[1] that these statutes do not confer jurisdiction upon a federal court to hear Mr. Gebre's claim.

1. This court has jurisdiction over the claim under 28 USC §1331.

28 USC §1331 grants, to the federal courts, original jurisdiction over all federal questions including jurisdiction to review agency action. *See Califano v. Sanders,* 430 U.S. 99, 99 (1977). Given the language and purpose of this statute, the only plausible argument divesting this court from subject matter jurisdiction over the instant claim would be a contention that no federal question is involved in this controversy. However, Defendants do not dispute that a federal question is present in Mr. Gebre's claim. Indeed, it is a common judicial practice to consider claims of the immigration agency and Department of State (DOS) inaction (or unreasonable action) brought under 28 §USC 1331.

---

[1] Instead, Defendants seem to solely rely on the argument of mootness. *See* discussion*, infra.*

Thus, the Eleventh Circuit Court of Appeal has upheld jurisdiction under 28 USC §1331 to challenge failure to give notice of the right to apply for asylum. *See Jean v. Nelson,* 727 F.2d 957 (11th Cir. 1984)(en banc), aff'd, 472 U.S. 846 (1985). Other courts have taken the similar position. *See, e.g., El Rescate Legal Serv., Inc., v. Executive Office of Immigration Review,* 959 F.2d 742 (9th Cir. 1992) (upholding jurisdiction under 28 §USC 1331 to challenge systematic problems with translations in immigration court); *Montes v. Thornburgh,* 919 F.2d 531 (9th Cir. 1990) (allowing jurisdiction under 28 §USC1331 to challenge action of the immigration judge who refused to accept documents).

Notwithstanding the applicable case law and plain language of this statute, Defendants seem to argue that the provisions of the Immigration and Nationality Act ("INA") §§ 201-204, somehow strip the Federal courts of the powers afforded under 28 USC §1331. *See specially*, INA § 204(a)(1)(I)(ii)(II) (8 U.S.C. §1154(a)(1)(I)(ii) (II)). Def. Mem. p. 3.

2. This court also has jurisdiction to hear Mr. Gebre's claim under 8 USC §1361 and the Administrative Procedures Act ("APA).

Even if Defendants argued that 8 USC §1361, the Mandamus Act, and the APA did not provide independent grounds for jurisdiction, while these arguments are, in isolation, correct, they do not divest this court of subject matter jurisdiction over the current case.

Courts have held that since mandamus requires that no other remedy be available and since the APA provides a legal mechanism for challenging agency action (or inaction), a claim may not be brought under 8 USC§1361 alone. *See, e.g., Mt. Emons*

*Mining Co. v. Babbitt,* 117 F.3d1167, 1170 (10th Cir. 1997). Furthermore, the Supreme Court in *Califano*, relied upon by Defendants, held that the APA does not provide an independent jurisdictional ground permitting judicial review. *Califano*, 430 U.S. at 990.

While the *Califano* court did not specifically address APA §702, this section of the APA should be read in conjunction with Section 706(1),which authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." The jurisdictional bar on APA claims is limited to negative injunctions which restrain the active doing of an injurious act. *See Carpet, Linoleum and Resilient Tile Layers v. Brown,* 656 F.2d 564, 566-67 (10th Cir. 1981).

Califano involved a claim for judicial review of agency action, where the Social Security Administration refused to reopen the plaintiff's claim for benefits. *Califano*, 430 U.S. at 990, 91. After *Califano* was decided in 1977, courts, including the U.S. Supreme Court and Circuit Courts of Appeal, have held that judicial review is permitted under the APA to compel agency action that has been unreasonably delayed. *See, e.g., Carpet*, 656 F.2d at 564, 567; *Telecommunication Research and Action Center v. FCC,* 750 F.2d 70, 79 (D.C. Cir. 1984) (upholding jurisdiction under the APA in mandamus claim to compel government action unreasonably delayed); *PCHRG v. FDA,* 740 F.2d 21 (D.C. Cir. 1984)(same).

Several years after *Califano* was decided, the U.S. Supreme Court explicitly announced that judicial review of prolonged government inaction is permissible under the APA and that courts have jurisdiction to compel agency action unlawfully withheld or unreasonably delayed. *See Costle v. Pacific Legal Foundation,* 445 U.S. 198, 220 n.14 (1980)(involving petition to review action of the Environmental Protection Agency). As

*Telecommunication Research and Action Center,* 750 F.2d at70 and PCHRG, 740 F.2d at 21.

The current case involves a claim to compel government action unlawfully withheld.. Accordingly, this court does have jurisdiction under the APA to hear this claim.

Furthermore, a mandatory injunction under the APA, such as the one sought here, "is essentially in the nature of mandamus." *Id.*; *see also Yu,* 36 F.Supp. 2d at 928 (citing *Mt. Emons Mining Co.,* 117 F.3d at1170). "[J]urisdiction for its issuance can be based on either §1361or §1331 or both." *Hernandez-Avalos v. INS,* 50 F.3d 842, 845 (10th Cir. 1995). Because in a claim challenging unreasonably delayed agency action, the APA "provides an enforceable legal right to agency action within a reasonable time, and the duty of the agency is prescribed by federal statute requiring interpretation of federal law, §1331 and APA §706(1) combine to provide federal subject matter jurisdiction over the controversy." *Yu*, 36 F.Supp. 2d at 929.

Courts have also uniformly held that plaintiffs are entitled to mandamus relief if plaintiffs fall within the "zone of interest" of the underlying statute. *See, e.g., Giddings v. Chandler,* 979 F.2d 1104,1108 (5th Cir. 1992). The same test applies to determine plaintiffs' standing under the APA. *Id.*; *Hernandez-Avalos,* 50 F.3d at 845. The essential inquiry in this test is whether "Congress intended for a particular class of plaintiffs to be relied upon to challenge agency disregard of the law," and there need be "no indication of congressional purpose to benefit the would-be plaintiff." *Hernandez-Avalos*, 50 F.3d 842 at 846-47 (quoting *Mount Evans Co. v. Madigan,* 14 F.3d 1444, 1452 (10th Cir. 1994). Clearly, Mr. Gebre, who is the object and victim of the Defendants' failure to act fall in

the "zone of interest" created by the Congressional provisions governing Diversity Lottery.

V.

**MR. GEBRE'S CLAIMS ARE LIVE AND THERE IS A CONTROVERSY**

The United States Constitution governs the jurisdictional limits of the Federal Courts. *See Deakins v. Monaghan*, 484 U.S. 193 (1988). Article III of the Constitution "limits federal courts to the adjudication of actual, ongoing controversies between litigants." *Id.* at 195. *See also*, *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 407 (1972). Defendants argue that the current case is moot because there are no longer any visas available. *See* Def. Mem. pp.6-7 ("Even if the Plaintiff was able to establish that Tiringo T. Tegebelu's application was submitted, it was not approved within the fiscal year for which visas were allotted and there is no longer a legal basis for visa issuance."). *Id.*

The current case is live in the legal sense because Mr. Gebre's wife's application has not yet been adjudicated and that she is still waiting to come to U.S. in order to join her husband. Moreover, there is no dispute that there is controversy concerning the reasoning behind the Defendants' failure to grant her a visa.

Defendants further argue that by Statute, they are unable to issue a visa even if they wanted to. *See* Def. Mem. p. 8 (" This renders the case moot, because the [the Government} cannot issue visa numbers that do not exist to plaintiffs.") quoting *Iddir v. Immigration and Naturalization Service,* 301 F.3d 492, 500-501 (7th Cir.2002) citations omitted.

However, the Court in *Iddir* also held that:

[n]either the expiration of the statutory deadline nor the fulfillment of the statutory quota extinguishes the Agency's obligation to comply with the court's order. Allowing the Agency to delay the adjudication and then claim inability to issue the visa "would impinge the authority of the court. Emphasis added.

*Id.* 301 F.3d 492, 501 n. 2. *See also Marianna Przhebelskaya, et al v. United States Bureau of Citizenship and Immigration Services* 338 F.Supp.2d 399, 403 (2004). [2]

In *Paunescu v. Immigration and Naturalization Service,* 76 F.Supp.2d 896 (N.D.Ill.1999), one of the plaintiffs, Teodor Paunescu, was selected in the 1998 DV Lottery, and the other plaintiff, his wife, submitted a derivative application. Both applications were complete and timely, but the FBI failed to complete Mr. Paunescu's fingerprint check within the fiscal year, despite Mr. Paunescu having submitted fingerprints on three separate occasions. *Id.* at 898. Just prior to the end of the fiscal year, on September 25, 1998, the district court, exercising its mandamus jurisdiction, ordered the Agency "immediately [to] complete adjudication of the applications for adjustment [of] status" for both plaintiffs "without delay and by no later than September 30, 1998." *Id.* Emphasis in original. The Agency failed to comply with this order because the FBI did not complete the fingerprint check until October 8, 1998. Mr. Paunescu's fingerprints, in fact, cleared the screening process. *Id.* at 902. The Court there, characterized the plaintiffs' experience as a "bureaucratic nightmare," and held that the Agency's "failure to perform a non-discretionary duty within a reasonable time

---

[2] See especially, footnote 5 , which states:
> Although defendants have argued only that the court's power is limited because the fiscal year has ended, and not because the number of diversity visas prescribed by the statute has been issued, the court notes that defendants could no more evade their obligation to comply with the court's order by asserting that no diversity visas are available than by asserting that the fiscal year had ended. *See also Iddir,* 301 F.3d at 501 n. 2.

deprived the plaintiffs of visas." *Id. See also Przhebelskaya,* 338 F.Supp.2d 399, 403-405.

The court in *Paunescu* then ordered the Agency to grant plaintiffs all relief "to which they would have been entitled had defendants processed their applications in a timely fashion." *Id.* at 903. The *Paunescu* court relied, in part, on *Marcetic v. Immigration and Naturalization Service,* 1998 WL 173129 (N.D.Ill.1998). *For complete analysis, see Przhebelskaya,* 338 F.Supp.2d 399, 403-405. In *Marcetic*, an immigration judge granted the plaintiff's application for status adjustment, based on his derivative eligibility for a diversity visa, during the fiscal year, but the Agency failed to issue the visa before the statutory deadline. *Id.* at 1. When the plaintiff brought an action for mandamus relief in the district court, the court compelled the Agency to adjust his status to that of a lawful permanent resident. *Id.* at 1-2. "[S]omeone made a ministerial error," the court declared, "and it was not the plaintiff. *Id.* at 1. Emphasis in original.

In the current case, it was the Defendants, who failed to process Mrs. Tegebelu's immigrant visa application. When she filed, there was ample time to process the application, but Defendants did not do so. This is despite the fact that Defendants had accepted Mrs. Tegebelu's application, and also obtained the application fee from her.[3] The bureaucratic nightmare, which the current plaintiffs suffered is not at all unlike that in Mr. Paunescu's case.

In light of the above, the Defendants' jurisdictional challenges are groundless, and this court has jurisdiction to hear the instant claim.

---

[3] It is noteworthy that on December 2, 2005, Mr. Gebre received a letter from Defendants, apparently, offering to refund his application fee, which he had paid for Mrs. Tegebelu. See **Exhibit B**.

# VI.
## MR. GEBRE IS ENTITLED TO MANDAMUS RELIEF

To be entitled to relief in the form of mandamus, a plaintiff must meet the following three-prong test: (i) that the plaintiff has a clear right to the relief sought; (ii) that the defendant owes a clear, ministerial, and non-discretionary duty to the plaintiff; and (iii) and that no other adequate remedy is available. *See Barron v. Reich,* 13F.3d 1370, 1374 (9th Cir. 1994); *Johnson v. Rogers,* 917 F.2d 1283, 1285(10th Cir. 1990); *Kirkland Masonry, Inc., v. Commissioner of Internal Revenue,* 614 F.2d 532, 534 (5th Cir. 1980).

In their Motion to Dismiss, pp. 1, 15, Defendants assert that Mr. Gebre has failed to state a claim upon which relief may be granted, and thus presumably has no standing to bring the suit. However, Defendants fail to argue in any comprehensive, articulative manner what was required of Mr. Gebre or how he failed to state his claim.

1. Mr. Gebre has a clear right to mandamus relief.

The question whether or not Mr. Gebre has a clear right to mandamus relief should be resolved by applying the "zone of interest test" for standing to seek mandamus relief. *See Hernandez-Avalos,* 50 F.3d at 844;*Carpet*, 656 F.2d at 566-67.

Addressing whether the plaintiffs whose applications to adjust to permanent resident status had been pending with the then Immigration and Naturalization Service ("INS") for two years, the district court in *Yu v. Brown,* 36 F.Supp.2d 922 (N.M., 1999) held that these plaintiffs were clearly within the zone of interest of the INA. *Yu*, 36 F. Supp. 2d at 930-31. As in *Yu,* in the current case, Mr. Gebre challenges government failure to act upon his wife's Application, and he and his wife are objects of such inaction. Under these circumstances, according to the U.S. Supreme Court, there is "little

question that the . . . inaction caused . . . [the plaintiff's] injury, and that a judgment . . . requiring the action will redress it." *Lujuan v. Defenders of Wildlife,* 504 U.S. 555, 561-62 (1992). Therefore, Mr. Gebre has a clear right to mandamus relief to compel Defendants to perform their duty to act upon his wife's Application.

2. Defendants owe a clear, ministerial, and non-discretionary duty to Mr. Gebre to adjudicate his wife's Application.

Defendants further argue that even if they owed such a duty, they will not be able to perform because of the fact that visa numbers are no longer available. See Def. Mem. pp.7, 13. However, while Defendants have discretion in deciding how to rule on the Mrs. Tegebelu's Application, they have no discretion to decide whether to rule on the Application or not. The APA, 5 USC §706(1), imposes a clear duty on Defendants to act upon the Mr. Gebre's wife's Application.

Defendants' implicit recognition of the deficiencies of their work is commendable; however, it does not cure Mr. Gebre's injury. His wife's application was filed on August 13, 2002. The deadline for visa issuance was Sept. 30, 2002. In essence, Defendants admit that by delaying they continued to neglect to adjudicate the Application. With all due respect to the Defendants' efforts to process visa applicants as they came in, it is unclear and inexplicable why Defendants were unable to process Mr. Gebre's wife's application for more than a month and a half before the visa issuance deadline.

Defendants assert that Mr. Gebre should have included his wife's name in the original application for Visa Lottery. However, this argument shall also fail because (i) at the time of the initial application, Mr. Gebre was not married; and (2) the law does not

*11*

require that a person list his future spouse on his original application. *See INA* § 203(d) (8 U.S.C. §1153(d)).

The Defendants' assertions are therefore groundless and misleading.

        3.      No adequate remedy is available to Mr. Gebre.

This issue is not disputed by Defendants and will not be addressed in detail. It should be reiterated, however, that Mr. Gebre has made numerous attempts to resolve this matter administratively, but their efforts proved to be fruitless.

Thus, first, Mr. Gebre has a clear right to mandamus relief because he is in the zone of interest of the INA provisions governing the Diversity Lottery. Second, Defendants owe to Mr. Gebre a clear, ministerial, and nondiscretionary duty to adjudicate his wife's application within the allowable time, and have failed to perform this duty. Lastly, Mr. Gebre has exhausted all administrative remedies, and no other remedy is available to them to resolve this matter. Therefore, Mr. Gebre has established prima facie eligibility for mandamus relief.

## VII.
## CONCLUSION

For the foregoing reasons, Mr. Gebre requests that Defendants' Motion to Dismiss be denied in its entirety. Mr. Gebre respectfully asks the court to order defendants to grant Mr. Gebre the relief to which he would have been entitled had Defendants complied with the statutory requirements by timely adjudicating Mrs. Tegebelus' application for an Immigrant visa.

                                                                                       Respectfully submitted,

Dated: May 4, 2006                                            Mr. Gebre, by his attorney

                                                                                    /S/_____

*13*

Ben Tariri
128A Tremont St.
Boston, MA 02108
Tel: (617) 574-9080
Fax: (617) 574-9070
BBO# 652042

Case 1:05-cv-11321-WGY    Document 10    Filed 05/04/2006    Page 13 of 13

EXHIBIT "A"



EXHIBIT " B "

## 2002AF26799

Dec 02, 2005

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖  Number of Derivatives: 1

GEBRE, ENGIDASHET WOLDE
C/O ABEBE AYALEW
26 LANCASTER RD
RANDOLF MA  02638

### NOTICE OF POSSIBLE REFUND ELIGIBILITY

Our records indicate that because of the erroneous collection of certain Immigrant Visa/Diversity Visa fees at the U.S. Embasssy in Addis Ababa between 2002 and 2005, It is possible that you may be due a $65.00 refund for a portion of the fees you paid for your visa and for the Immigrant/Diversity visa of each of your derivative family members.

To apply for this possible refund, you must follow the steps listed below. Failure to correctly complete each step will result in your application not being considered.

1. Complete the enclosed statement.
2. Sign and date the statement in the presence of a Notary Public. The signature must be notarized.
3. Attach a copy of your Alien Registration Card ("green card" or Immigrant Visa)
4. Indicate address change on this notice if the address listed above is not correct
5. Mail the properly notarized statement and any attachments to:

National Visa Center
Attention: CMR-1
32 Rochester Avenue
Portsmouth, NH  03801

Upon receipt of your completed application for a refund, we determine whether you are eligible for a refund of $65.00 per Immigrant/Diversity visa for yourself and each of your derivative family members. If you are determined to be so eligible, a check for the total amount of the refund will be mailed to the address on this notice or to the new address indicated above. Applications received more than one year from the date of this notification will not be accepted.

**National Visa Center**
**U.S. Department of State**

Post-it® Fax Note  7671 | Date 1/4/06 | # of pages ▶ 2
To Ben Tahririci | From Lou Sablu
Co./Dept. | Co.
Phone # (617) 574-9080 | Phone # (617) 727 4732 x 402
Fax # (617) 574-9070 | Fax # (617) 727-0093