**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ENGIDASHET W. GEBRE, <br><br> Plaintiff, <br><br> v. <br><br> CONDOLEEZA RICE, as Secretary of State, and DEPARTMENT OF STATE, <br><br> Defendants. | **Civil Action No. 05-11321-WGY** |

**DEFENDANTS' REPLY TO**
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants file the following reply to Plaintiff's Opposition to Defendants' Motion to Dismiss ("Plaintiff's Opposition") (Docket No. 10).

**The DV Program Application Process**

Defendants do not dispute that Mr. Gebre was not married at the time he submitted his initial application for the Diversity Immigrant Visa Program ("DV Program"). Mr. Gebre's application was due into the DV Program no later than November 1, 2000. See Exhibit A, Instructions for the 2002 DV Program ("DV-2002 Instructions") at p. 1; Exhibit B, Second Declaration of Jeffrey Gorsky ("Second Gorsky Declaration") at ¶ 3. Nor is it disputed that Ms. Tegebelu was eligible to apply for a visa as a derivative spouse to accompany or follow to join Mr. Gebre. DV-2002 Instructions at p. 4 and p. 6, ¶ 10, 11; Second Gorsky Declaration at ¶ 3.

However, Mr. Gebre's marriage to Ms. Tegebelu took place on April 21, 2001 (Exhibit A of Plaintiff's Opposition), approximately 6 weeks after notification of his selection for the DV Program had been mailed to him ( DV-2002 notification packets for Africa were mailed out on

or about March 14, 2001).  Second Gorsky  Declaration at ¶ 3.  Thus, the fact remains that Ms.

Tegebelu was not listed on Mr. Gebre's initial DV application and, as explained below, the U.S.

Embassy in Ethiopia had a legitimate basis to question whether he had entered into a legal

marriage and whether that marriage was bona fide and not opportunistically entered into in order

to convey an immigration benefit.

As stated in the Defendants' Memorandum In Support of their Motion to Dismiss,

fraudulent claims for derivative status are a significant problem in the DV Program[1] and the

application sequence of the instant case provided grounds for questioning the validity of the

marriage.  Defendants' Memorandum In Support, Docket No. 10, pp. 5-6 and Exhibit A, Gorsky

Declaration at ¶ 7; Second Gorsky Declaration at ¶¶ 5-7.[2]  Under such circumstances the

derivative spouse's application must be independently reviewed for eligibility, including

verification of the relationship.  Id.  This review and verification is commenced at the time the

applicant appears for an interview at the U.S. Consulate (at the Embassy) and the process for

---

[1]     See http://travel.state.gov/visa/reciprocity/Country%20Folder/E/Ethiopia.htm
which states:  "Note:  Civil registration of births, marriages, and deaths is not automatic in
Ethiopia.  The documentation of these events is relatively new and largely confined to urban
areas.  A church-issued document, an acknowledgment from one's "kebele", and affidavits from
three witnesses, all of which can be had for a price, are sufficient evidence for issuance of
certificates.  Relationships are rarely investigated for veracity.  With the exception of divorce
decrees, all certificates are available in Amharic, English, or English-Amharic combinations."
The statement  "Relationships are rarely investigated for veracity" means that the Ethiopian
authorities rarely investigate the veracity of claims to civil status, which is one problem with the
credibility of these civil documents.

[2]     It is generally recognized that a marriage entered into for the primary purpose of
obtaining immigration benefits is to be considered a sham marriage for which no immigration
benefit can be obtained, Matter of McKee, 17 I&N Dec. 332 (BIA 1980); see also Lutwak v.
United States, 344 U.S. 604 (1953); McLat v. Longo, 412 F. Supp. 1021 (D.V.I. 1976); Matter of
M-, 8 I&N Dec. 217 (BIA 1958). See generally Johl v. United States, 370 F.2d 174 (9th Cir.
1966.

adjudication of the application is started.  Id.  This process is extremely time consuming and resource intensive.  Id.

In the instant case, Ms. Tegeybelu's interview was on August 13, 2002 – only six weeks before the deadline for issuance of visas for fiscal year 2002, and at a time when some 3, 222 DV Program applications from Ethiopia were being adjudicated.  Id. at ¶ 7.  Faced with this short time frame for the issuance of visas and the suspicion raised by the post-application marriage, it would have been reasonable for the Embassy to conclude that there was insufficient time or resources available to verify the marriage.  Id.  As a consequence, rather than deny both applications, Mr. Gebre's application (the original and primary application) was approved, and Ms. Tegeybelu's application was denied because she was not listed in Mr. Gebre's original application form (the reason provided on the Lookup Detail – Defendants' Memorandum in Support, Attachment B to Gorsky Declaration).[3]  Thus, it is not simply the failure to list Ms. Tegeybelu on the original application, but also the suspicion raised by the marriage post-application and notification of selection that could not be verified before the end of the 2002 fiscal year.

The remainder of the Plaintiff's opposition arguments are misplaced in the context DV Program and applicable law.  It is incorrect to assert that any government action has been unlawfully withheld or unreasonably delayed.  The statutory requirements of the DV Program, the Department of State ("DOS") implementing regulations, and the case law interpreting the DV

---

[3]    Upon arrival into the United States in 2002, Mr. Gebre could have promptly filed for Second Preference Immigrant Status ("SPIS" or "Form I-130") for his wife pursuant to section 203(a)(2)(A), 18 U.S.C. § 1153(a)(2)(A) of the INA.  Form I-130 applications are processed on a rolling basis with a back-up of several years.  Currently, applications are being processed for the 2002 fiscal year.  According to his counsel, Mr. Gebre has filed a Form I-130

program are very clear and unambiguous. Eligibility for derivative status only allows an alien to apply for a visa and does not guarantee a visa. Further, Ms. Tegeybelu's application was adjudicated and denied and there is no further basis for review of that determination under the rule of consular non-reviewability. See Adams v. Baker, 909 F.2d 643, 649 (1st Cir. 1990) ("We note first, that in the absence of statutory authorization or mandate from Congress, factual determinations made by consular officers in the visa issuance process are not subject to review by the Secretary of State, . . . , and are similarly not reviewable by courts." (citations omitted)); Bruno v. Albright, 197 F.3d 1153, 1158-1159 (D.C. Cir. 1999) (". . .not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of Government to exclude a given alien"); see also Shaughnessy v. Mezei, 345 U.S. 206, 210 (1958); see e.g., Centeno v. Schultz, 817 F.2d 1212 (5th Cir. 1987), cert. denied, 484 U.S. 1005 (1988); Li Hing of Hong Kong, Inc. v. Levin, 800 F.2d 970 (9th Cir. 1986); Ventura-Escamilla v. INS, 647 F.2d 28 (9th Cir. 1981); Rivera de Gomez v. Kissinger, 534 F.2d 518 (2d Cir.), cert. denied, 429 U.S. 987 (1976); U.S. ex rel. Ulrich v. Kellogg, 30 F.2d 984 (D.C. Cir.), cert. denied, 279 U.S. 630 (1929); Romero v. Consulate of the U.S., Barranquilla, 860 F. Supp. 319 (E.D. Va. 1994); Garcia v. Baker, 765 F. Supp. 426 (N.D. Ill. 1990); Hermina Sague v. United States, 416 F. Supp. 217 (D.P.R. 1976).

## Senate Bill 1119

At the motion hearing on May 10, 2006, the Court inquired as to the Executive Branch position on Senate Bill 1119 of May 25, 2005 ("S. 1119"). The Bill would permit aliens to remain eligible for a diversity visa beyond the fiscal year in which the alien applied for the visa.

---

for his wife but did not do so until 2004.

After conferring with DOS legislative affairs personnel, through DOS counsel, it appears that S. 1119 has not been acted on in Congress and the DOS has taken no formal position on S. 1119. The government also notes that the provisions of S. 1119 applicable to prior fiscal years (Sec. 2(b)), such as the instant case, would only apply to adjustment of status applications (i.e., visa applicants already residing in the United States under temporary immigrant status).  Thus, S. 1119, if enacted, would not provide any relief to the Plaintiff.

## Conclusion

Based on the foregoing and the government's Memorandum In Support (Docket No. 10), the  government respectfully requests that its Motion to Dismiss be granted pursuant to Fed. R. Civ. P. 12, for failure to state a claim upon which relief can be granted, and lack of jurisdiction due to mootness.

Respectfully submitted,

UNITED STATES OF AMERICA

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Anton P. Giedt 5/19/2006
Anton P. Giedt
Assistant U.S. Attorneys
1 Courthouse Way
Boston, MA 02210
617-748-3309 (Voice)
617-748-3967 (Fax)
anton.giedt@usdoj.gov

**LOCAL RULE 7.1(A)(2) CERTIFICATION**

Undersigned counsel certifies that pursuant to the requirements under Local Rule 7.1(A)(2), he has conferred with Plaintiff's counsel in an effort to resolve the issues addressed in this reply.

/s/ Anton P. Giedt
Anton P. Giedt
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                                          Boston, Massachusetts
                                                                     DATE: May 19, 2006

I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon the Plaintiff's counsel of record through Electronic Filing.

/s/ Anton P. Giedt
Anton P. Giedt
Assistant U.S. Attorney



EXHIBIT A
Gebre v. Rice 05-11321-WGY
U.S. Reply 5-19-2006

**United States Department of State**
*Bureau of Consular Affairs*

## INSTRUCTIONS FOR THE 2002 DIVERSITY IMMIGRANT VISA PROGRAM (DV-2002)

Each year, the U.S. Diversity Visa program makes available permanent residence visas to persons meeting the eligibility requirements.  Applicants for Diversity Visas are initially chosen through a random computer-generated lottery drawing. Visas are distributed among six geographic regions with a greater number of visas going to regions with lower rates of immigration, and no visas going to countries sending more than 50,000 immigrants to the U.S. in the past five years. No one country can receive more than seven percent of the available Diversity Visas in any one year.

**For DV-2002, natives of the following countries are <u>not</u> eligible to apply:**

**CANADA**, **CHINA** (mainland, except Hong Kong S.A.R.), **COLOMBIA**, **DOMINICAN REPUBLIC**, **EL SALVADOR**, **HAITI**, **INDIA**, **JAMAICA**, **MEXICO**, **PAKISTAN, PHILIPPINES**, **SOUTH KOREA**, **UNITED KINGDOM** (except Northern Ireland) and its dependent territories, and **VIETNAM**.

ENTRIES FOR THE DV-2002 DIVERSITY VISA LOTTERY MUST BE <u>RECEIVED</u> AT THE KENTUCKY CONSULAR CENTER MAILING ADDRESS LISTED ON PAGE 2 BETWEEN NOON ON  MONDAY, OCTOBER 2, 2000 AND NOON ON WEDNESDAY, NOVEMBER 1, 2000.  ENTRIES RECEIVED BEFORE OR AFTER THESE DATES WILL BE DISQUALIFIED REGARDLESS OF WHEN THEY ARE POSTMARKED.  ALSO, ENTRIES MAILED TO ANY ADDRESS OTHER THAN THE KENTUCKY CONSULAR CENTER ADDRESS ON PAGE 2 WILL BE DISQUALIFIED.

### REQUIREMENTS

- Applicant must have **nativity** in an eligible country.
- Applicant must meet either the **education or training** requirement of the DV program.

**Nativity:** In most cases this means the country in which the applicant was born.  However, if a person was born in an ineligible country but his/her spouse was born in an eligible country, such person can claim the spouse's country of birth rather than his/her own.  Also, if a person was born in an ineligible country, but neither of his/her parents was born there or resided there at the time of the birth, such person may be able to claim nativity in one of the parents' country of birth.

**Education or Training:** An applicant must have EITHER a high school education or its equivalent, defined in the U.S. as successful completion of a 12-year course of elementary and secondary education; OR two years of work experience within the past five years in an occupation requiring at least two years of training or experience to perform.  U.S. Department of Labor definitions will apply.

**If the applicant does not meet these requirements, he or she should NOT submit an entry to the DV program.**

### PROCEDURES FOR SUBMITTING AN ENTRY FORM

Only **ONE** entry form may be submitted by or for each applicant. The applicant must personally sign the entry with his/her usual and customary signature, preferably in his/her native alphabet. **The entry will be disqualified if the applicant:**

- **Submits more than one entry;**
- **Does not personally sign his or her own entry.**

2

EXHIBIT A

Gebre v. Rice 05-11321-WGY
U.S. Reply 5-19-2006

There is no specific format for the entry.  Simply use a plain sheet of paper and type or clearly print in the **English alphabet** the following information:

---

### ON A PLAIN SHEET OF PAPER INCLUDE:

The following information must appear on the entry.  **Failure to provide all of this information will disqualify the applicant.**

1.  **FULL NAME**, with the last (surname/family) name underlined
    EXAMPLES: <u>Public</u>, Sara Jane    (or)    <u>Lopez</u>, Juan Antonio

2.  **DATE AND PLACE OF BIRTH**
    Date: Day, Month, Year      EXAMPLE: 15 November 1961
    Place: City/Town, District/County/Province, Country
                    EXAMPLE: Munich, Bavaria, Germany
    The name of the country should be that which is currently in use for the place where the applicant
    was born (Slovenia, rather than Yugoslavia; Kazakstan rather than Soviet Union, for example).

3.  **THE APPLICANT'S NATIVE COUNTRY IF DIFFERENT FROM COUNTRY OF BIRTH**
    If the applicant is claiming nativity in a country other than his/her place of birth, this must be
    clearly indicated on the entry.  This information must match with what is put on the upper left corner
    of the entry envelope.  (See "MAILING THE ENTRY" below.)  If an applicant is claiming nativity
    through spouse or parent, please indicate this on the entry.  (See "REQUIREMENTS" section on
    page 1 for more information on this item.)

4.  **NAME, DATE AND PLACE OF BIRTH OF THE APPLICANT'S SPOUSE AND CHILDREN
    (IF ANY)** Failure to provide all of this information will disqualify the applicant.
     (see question 10 on the list of Frequently Asked Questions.)

5.  **FULL MAILING ADDRESS**
    This must be clear and complete, as any communications will be sent there.  A telephone number
    is optional, but useful.

6.  **PHOTOGRAPH.**  Attach a recent, preferably less than 6 months old, photograph of the applicant,
    1.5 inches (37 mm) square in size, with the applicant's name <u>printed</u> on the back.  The photograph
    (not a photocopy) should be attached to the entry with clear tape--do NOT use staples or paperclips,
    which can jam the mail processing equipment.

7.  **SIGNATURE.**  Failure to personally sign the entry will disqualify the applicant.

---

**MAILING THE ENTRY**

The mailing address for all entries is the same, except for the ZIP (POSTAL) CODE.  The address is:

> **DV-2002 Program**
> **Kentucky Consular Center**
> **Lexington, KY  ZIP CODE (see below)**
> **U.S.A.**

EXHIBIT A

Gebre v. Rice 05-11321-WGY

U.S. Reply 5-19-2006

Submit the entry by regular or air mail to the address matching the region of the applicant's country of nativity. Entries sent by express or priority mail, fax, hand, messenger, or any means requiring special handling will not be processed.

The envelope must be between 6 and 10 inches (15 to 25 cm) long and 3 1/2 and 4 1/2 inches (9 to 11 cm) wide. Postcards or envelopes inside express or oversized mail packets are NOT acceptable.  In the upper left hand corner of the envelope the applicant must write his/her country of nativity (see instruction 3 above), followed by the applicant's name and full return address**.**  The applicant must provide both the country of nativity and the country of the address, even if both are the same.  **Failure to provide this information will disqualify the entry.**

Use the correct ZIP (POSTAL) CODE for the applicant's region of nativity.  The regions are divided as follows:

**Africa** includes all countries on the African continent and adjacent islands;
**Asia** extends from Israel to the northern Pacific islands, and includes Indonesia;
**Europe** extends from Greenland to Russia, and includes all countries of the former USSR;
**North America** includes the Bahamas;
**Oceania** includes Australia,  New Zealand, Papua New Guinea and all countries and islands of the South Pacific;
**South America/Central America/Caribbean** extends from Central America (Guatemala) and the Caribbean nations to Chile.

The **ZIP (POSTAL) CODES** at the Kentucky Consular Center are:

| | |
|---|---|
| **AFRICA:** | **41901** |
| **ASIA:** | **41902** |
| **EUROPE:** | **41903** |
| **SOUTH AMERICA/CENTRAL AMERICA/CARIBBEAN:** | **41904** |
| **OCEANIA:** | **41905** |
| **NORTH AMERICA:** | **41906** |

**EXAMPLE:**  An applicant who was born in Australia and now lives in France may submit one entry to the appropriate Zip (postal) code for Oceania; the envelope should look like this:



6" - 10"  or  15 cm - 25 cm

Australia
Applicant's Full Name
Street Address
City, Province, Postal Code
France

3 1/2" - 4 1/2"

or

9 cm - 11 cm

**EXAMPLE**

DV-2002 Program
Kentucky Consular Center
Lexington, KY  (see above for appropriate zip)
U.S.A.

(If, for instance, the applicant's country is Australia (in Oceania), the  zip (postal) code for Australia would be used, that is, 41905.)

EXHIBIT A
Gebre v. Rice 05-11321-WGY
U.S. Reply 5-19-2006

## SELECTION OF APPLICANTS

**Applicants will be selected at random by computer from among all qualified entries.** Those selected will be notified by mail during May to July 2001 and will be provided further instructions, including information on fees connected with immigration to the U.S. Persons not selected will NOT be notified. U.S. embassies and consulates will not be able to provide a list of successful applicants. Spouses and unmarried children of successful applicants under age 21 may also apply for visas to accompany or follow to join the principal applicant. DV-2002 visas will be issued between October 1, 2001 and September 30, 2002.

**Applicants must meet ALL eligibility requirements under U.S. law in order to be issued visas.**

**Processing of entries and issuance of diversity visas to successful applicants and their eligible family members MUST occur by September 30, 2001. Family members may not obtain diversity visas to follow to join the applicant in the U.S. after this date.**

*Important Notice: There is **NO** initial fee, other than postage, required to enter the DV-2002 program. The use of an outside intermediary or assistance to prepare a DV-2002 entry is entirely at the applicant's discretion. Qualified entries received directly from applicants or through intermediaries have equal chances of being selecte by computer. There is no advantage to mailing early, or mailing from any particular place. Every entry received during the mail-in period will have an equal random chance of being selected within its region. However, more than one entry per person will disqualify the person from registration.*

## FREQUENTLY ASKED QUESTIONS ABOUT DV-2002 REGISTRATION

1. WHAT DOES THE TERM "NATIVE" MEAN? ARE THERE ANY SITUATIONS IN WHICH PERSONS WHO WERE NOT BORN IN A QUALIFYING COUNTRY MAY APPLY?

"Native" ordinarily means someone **born** in a particular country**, regardless of the individual's current country of residence or nationality.**

"Native" also means someone entitled to be "charged" to a particular country under the provisions of Section 202(b) of the Immigration and Nationality Act. Applicants for DV-2002 registration may claim chargeability to the country of birth of a spouse; a minor dependent child can be charged to the country of birth of a parent; and an applicant born in a country of which neither parent was a native or a resident at the time of his/her birth may be charged to the country of birth of either parent. An applicant who claims alternate chargeability <u>must</u> include information to that effect on the application for registration (see number 3 of the application information items on page 2 of this Visa Bulletin), and must show the native country claimed on the upper left hand corner of the envelope in which the registration request is mailed.

2. ARE THERE ANY CHANGES OR NEW REQUIREMENTS IN THE APPLICATION PROCEDURES FOR THIS DIVERSITY VISA REGISTRATION?

**The address for submitting DV applications has changed. Applicants must mail their entries to the Kentucky Consular Center address listed on page 2. Entries mailed to any other address will be disqualified.** The information required on the entry and on the envelope in which it is sent is specified in detail earlier in this Visa Bulletin. Each entry must be personally signed by the applicant. A recent photograph of the applicant must be attached, with the applicant's name printed on the back.

**3.** ARE SIGNATURES AND PHOTOGRAPHS REQUIRED FOR EACH FAMILY MEMBER, OR ONLY FOR THE PRINCIPAL APPLICANT?

The signature and photograph of the principal applicant only are required. No signature or photograph is needed for the spouse or children of the applicant.

**4.** WHY DO CERTAIN COUNTRIES <u>NOT</u> QUALIFY FOR THE DIVERSITY PROGRAM?

Diversity visas are intended to provide an immigration opportunity for persons from countries other than the main source countries of immigration to the U.S. The law states that no diversity visas shall be provided for "high admission" countries, that is, countries from which during the previous five years there were more than 50,000 immigrants in the Family-Sponsored and Employment-Based visa categories. Each year, the Immigration and Naturalization Service (INS) adds the family and employment immigrant admission figures for the previous five years, to identify the countries which must be excluded from the annual diversity lottery. Because there is a separate determination made before each lottery application period, the list of countries which do not qualify may change from one year to the next.

**5.** WHAT IS THE NUMERICAL LIMIT FOR DV-2002?

By law, the U.S. diversity immigration program makes available a maximum of 55,000 permanent residence visas each year to eligible persons. However, the Nicaraguan and Central American Relief Act (NCARA) passed by Congress in November 1997 stipulates that beginning as early as DV-99, and for as long as necessary, 5,000 of the 55,000 annually-allocated diversity visas will be made available for use under the NCARA program. The actual reduction of the limit to 50,000 began with DV-2000 and remains in effect for the DV-2002 program.

**6.** WHAT ARE THE REGIONAL DIVERSITY (DV) VISA LIMITS FOR DV-2002?

The INS determines the DV regional limits for each year according to a formula specified in Section 203(c) of the Immigration and Nationality Act (INA). Once the INS has completed the calculations, the DV-2002 regional visa limits will be announced.

**7.** WHEN ARE ENTRIES FOR THE DV PROGRAM ACCEPTED EACH YEAR?

The month long application period will be held each Fall beginning at noon on the first Monday in October. Each year millions of applicants apply for the program during the mail-in registration period. The massive volume of entries creates an enormous amount of work in selecting and processing successful applicants. Holding the application period in the Fall will ensure successful applicants are notified in a more timely manner, and give both them and our Embassies and Consulates overseas more time to prepare and complete the entries for visa issuance.

**8.** MAY PERSONS WHO ARE IN THE U.S. APPLY FOR THE PROGRAM?

Yes, an applicant may be in the U.S. or in another country, and the entry may be mailed from the U.S. or from abroad.

EXHIBIT A
Gebre v. Rice 05-11321-WGY
U.S. Reply 5-19-2006

**9.** IS EACH APPLICANT LIMITED TO ONLY ONE ENTRY DURING THIS DV-2002 REGISTRATION PERIOD?

Yes, the law allows only **one** entry **by or for** each person during each registration period; **applicants who submit more than one entry will be disqualified.** Applicants may be disqualified at time of selection as a winner or at the time of the visa interview if more than one entry is detected. Applicants may apply for the program each year, however.

**10.** MAY A HUSBAND AND A WIFE EACH SUBMIT A SEPARATE ENTRY?

Yes, if otherwise qualified, a husband and a wife may each submit one entry. If either is selected, the other would be entitled to derivative status. **Note: They may not sign for each other. The husband must sign his entry and the wife must sign hers.**

**11.** WHAT FAMILY MEMBERS MUST I BE SURE TO INCLUDE ON MY ENTRY?

On your entry you must list your **spouse,** that is husband or wife, **and all children who are unmarried and under age 21**. You must list your spouse even if you are currently separated from him/her; if you are formally divorced, you do not need to list your former spouse. For customary marriages, the important date is the date of the original marriage ceremony, <u>not</u> the date on which the marriage is registered. You must list **ALL your unmarried children under age 21**, whether they are your natural children, your spouse's children by a previous marriage, or children you have formally adopted in accordance with the laws of your country. Even children in the above categories who are not currently living with you must be listed.

The fact that you have listed family members on your entry does not mean that they later must travel with you. They may choose to remain behind. However, if you include an eligible dependent on your entry forms whom you failed to include on your original entry, your case will be disqualified. (This only applies to persons who were dependents at the time the original application was submitted, not those acquired at a later date.) Listing ineligible persons (a brother or sister, a child over 21, a child living with you but not formally adopted, etc.) on your entry will not disqualify the entry, but it will not make such persons eligible for a visa. Your spouse may still submit a separate entry, even though he or she is listed on your entry, as long as both entries include details on all dependents in your family. See question 9 above.

**12.** MUST EACH APPLICANT SUBMIT HIS/HER OWN ENTRY, OR MAY SOMEONE ACT ON BEHALF OF AN APPLICANT?

Applicants may prepare and submit their own entries, or have someone submit the entry for them. Regardless of whether an entry is submitted by the applicant directly, or assistance is provided by an attorney, friend, relative, etc., **only one entry may be submitted in the name of each person. The applicant's original signature is required on the entry, regardless whether it is prepared and submitted by the applicant or by someone else.** If the entry is selected, only one notification letter will be sent, to the address provided on the entry.

**13.** WHAT ARE THE REQUIREMENTS FOR EDUCATION OR WORK EXPERIENCE?

The law and regulations require that every applicant must have at least a high school education or its equivalent <u>or</u>, within the past five years, have two years of work experience in an occupation requiring at least two years training or experience. A "high school education or equivalent" is defined as successful completion of a twelve-year course of elementary and secondary education in

the United States or successful completion in another country of a formal course of elementary and secondary education comparable to a high school education in the United States. Determination of qualifying work experience shall be based upon the most recent edition of the Dictionary of Occupational Titles published by the Employment and Training Administration of the United States Department of Labor.

Documentary proof of education or work experience should **not** be submitted with the lottery entry, but must be presented to the consular officer at the time of immigrant visa interview.

**14**.  HOW  WILL  WINNERS  BE  SELECTED?

At the Kentucky Consular Center all mail received will be separated into one of six geographic regions and individually numbered.  After the end of the application period, a computer will randomly select entries from among all the mail received for each geographic region.  Within each region, the first letter randomly selected will be the first case registered, the second letter selected the second registration, etc.  It makes no difference whether an entry is received early or late in the application period; all entries received during the mail-in period will have an equal chance of being selected within each region.  When an entry has been selected, the applicant will be sent a notification letter by the Kentucky Consular Center, which will provide visa application instructions.  The Kentucky Consular Center will continue to process the case until those who are selected are instructed to appear for their visa interviews at a U.S. consular office or until those able to do so apply at an INS office in the United States for change of status.

**15.**  MAY  WINNING  APPLICANTS  ADJUST  THEIR  STATUS  WITH  THE  INS?

Yes, provided they are otherwise eligible to adjust status under the terms of Section 245 of the INA, selected applicants who are physically present in the United States may apply to the Immigration and Naturalization Service (INS) for adjustment of status to permanent resident.  Applicants must ensure that INS can COMPLETE ACTION on their cases before September 30, 2002, since on that date registrations for the Fiscal Year 2002 DV-2002 program expire.

**16.** WILL  APPLICANTS  WHO  ARE  NOT  SELECTED  BE  INFORMED?

No, applicants who are not selected will receive no response to their entry.  Only those who are selected will be informed.  All notification letters are expected to be sent within about nine months of the end of the application period.  Anyone who does NOT receive a letter will know that his/her application has not been selected.

**17.**  HOW  MANY  APPLICANTS  WILL  BE  SELECTED?

There are 50,000 DV visas available for Fiscal Year 2002 but more than that number of individuals will be selected.  Since it is likely that some of the first 50,000 persons who are selected will not pursue their cases to visa issuance, selecting a larger number of entries should ensure use of all DV-2002 numbers, but it also risks some selected persons being left out.  All applicants who are selected will be informed promptly of their place on the list.  Each month visas will be issued, visa number availability permitting, to those applicants who are ready for issuance during that month.  Once all of the Fiscal Year 2002 visas have been issued, the program for the year will end.  In principle, visa numbers could be finished before September 2002.  Selected applicants who wish to receive visas must be prepared **to act promptly** on their cases**. Being selected in the entry selection process does not automatically guarantee a visa.**

**18.** IS THERE A MINIMUM AGE FOR APPLICANTS TO APPLY FOR THE DV-2002 PROGRAM?

There is no minimum age to apply for the program, but the requirement of a high school education or work experience for each principal applicant at the time of application will effectively disqualify most persons who are under age 18.

**19.** WILL THERE BE ANY SPECIAL FEE FOR DV-2002 CASE PROCESSING?

There is **no fee for submitting an entry**, and **no fee** should be included with the entry sent to the mailing addresses indicated above.  A special DV case processing fee will be payable later by persons whose entries are actually selected and processed for DV-2002 visas.  DV-2002 applicants, like other immigrant visa applicants, must also pay the regular visa fees at the time of visa issuance.  Details of required fees will be included with the instructions sent to applicants who are selected.

**20.** ARE DV-2002 APPLICANTS SPECIALLY ENTITLED TO APPLY FOR A WAIVER OF ANY OF THE GROUNDS OF VISA INELIGIBILITY?

No.  Applicants are subject to all grounds of ineligibility specified in the Immigration and Nationality Act and there are no special provisions for the waiver of any ground of visa ineligibility other than those ordinarily provided in the Act.

**21.** MAY PERSONS WHO ARE ALREADY REGISTERED FOR AN IMMIGRANT VISA IN ANOTHER CATEGORY APPLY FOR THE DV-2002  PROGRAM?

Yes, such persons may apply for the  DV-2002 program through this registration as well.

**22.** HOW LONG DO APPLICANTS WHO ARE SELECTED REMAIN ENTITLED TO APPLY FOR VISAS IN THE DV-2002 CATEGORY?

Persons selected in the DV-2002 lottery are entitled to apply for visa issuance **only during fiscal year 2002**, i.e., from October 2001 through September 2002.  There is no carry-over of DV benefit into another year for persons who are selected but who do not obtain visas during FY-2002.  Also, spouses and children who derive status from a DV-2002 registration can only obtain visas in the DV category between October 2001 and September 2002.

## LISTS OF QUALIFYING COUNTRIES BY REGION

The lists below show the countries QUALIFIED within each geographic region for this diversity program. The determination of countries within each region is based on information provided by the Geographer of the Department of State.  The countries which do not qualify for the DV-2002 program were identified by the Immigration and Naturalization Service according to the formula in Section 203(c) of the Immigration and Nationality Act.  Dependent areas overseas are included within the region of the governing country.  The countries which do NOT qualify for this diversity program (because they are the principal source countries of Family-Sponsored and Employment-Based immigration) are noted in parentheses after the respective regional lists.

EXHIBIT A
Gebre v. Rice 05-11321-WGY
U.S. Reply 5-19-2006

## AFRICA

ALGERIA
ANGOLA
BENIN
BOTSWANA
BURKINA FASO
BURUNDI
CAMEROON
CAPE VERDE
CENTRAL AFRICAN REPUBLIC
CHAD
COMOROS
CONGO
CONGO, DEMOCRATIC
  REPUBLIC OF THE
COTE D'IVIORE (IVORY COAST)
DJIBOUTI
EGYPT
EQUATORIAL GUINEA
ERITREA
ETHIOPIA
GABON
GAMBIA, THE
GHANA
GUINEA
GUINEA-BISSAU
KENYA
LESOTHO

LIBERIA
LIBYA
MADAGASCAR
MALAWI
MALI
MAURITANIA
MAURITIUS
MOROCCO
MOZAMBIQUE
NAMIBIA
NIGER
NIGERIA
RWANDA
SAO TOME AND PRINCIPE
SENEGAL
SEYCHELLES
SIERRA LEONE
SOMALIA
SOUTH AFRICA
SUDAN
SWAZILAND
TANZANIA
TOGO
TUNISIA
UGANDA
ZAMBIA
ZIMBABWE

## ASIA

AFGHANISTAN
BAHRAIN
BANGLADESH
BHUTAN
BRUNEI
BURMA
CHINA - TAIWAN BORN
CAMBODIA
HONG KONG SPECIAL
  ADMINISTRATIVE REGION
INDONESIA
IRAN
IRAQ
ISRAEL
JAPAN
JORDAN
KUWAIT

LAOS
LEBANON
MALAYSIA
MALDIVES
MONGOLIA
NEPAL
NORTH KOREA
OMAN
QATAR
SAUDI ARABIA
SINGAPORE
SRI LANKA
SYRIA
THAILAND
UNITED ARAB EMIRATES
YEMEN

EXHIBIT A
Gebre v. Rice 05-11321-WGY
U.S. Reply 5-19-2006

(Asia countries which do <u>not</u> qualify for this year's diversity program:
  CHINA - mainland born, INDIA, PAKISTAN, SOUTH KOREA, PHILIPPINES,
and VIETNAM.)  [The HONG KONG S.A.R. <u>does qualify</u> and is listed above.]  Macau's
eligibility for participation in the DV lottery has not been determined by legislative action
at the time of Visa Bulletin publication.


**<u>EUROPE</u>**

| | |
|---|---|
| ALBANIA | LITHUANIA |
| ANDORRA | LUXEMBOURG |
| ARMENIA | MACEDONIA, THE FORMER |
| AUSTRIA |   YUGOSLAV REPUBLIC OF |
| AZERBAIJAN | MALTA |
| BELARUS | MOLDOVA |
| BELGUIM | MONACO |
| BOSNIA AND HERZEGOVINA | MONTENEGRO |
| BULGARIA | NETHERLANDS |
| CROATIA |   including components and |
| CYPRUS |   dependent areas overseas |
| CZECH REPUBLIC | NORTHERN IRELAND |
| DENMARK | NORWAY |
|   including components and | POLAND |
|   dependent areas overseas | PORTUGAL |
| ESTONIA | ROMANIA |
| FINLAND | RUSSIA |
| FRANCE | SAN MARINO |
|   including components and | SERBIA |
|   dependent areas overseas | SLOVAKIA |
| GEORGIA | SLOVENIA |
| GERMANY | SPAIN |
| GREECE | SWEDEN |
| HUNGARY | SWITZERLAND |
| ICELAND | TAJIKISTAN |
| IRELAND | TURKEY |
| ITALY | TURKMENISTAN |
| KAZAKSTAN | UKRAINE |
| KYRGYZSTAN | UZBEKISTAN |
| LATVIA | VATICAN CITY |
| LICHTENSTEIN | |

(European countries <u>not</u> qualified for this year's diversity program:
GREAT BRITAIN.  GREAT BRITAIN (UNITED KINGDOM) includes the following dependent areas:
ANGUILLA, BERMUDA, BRITISH VIRGIN ISLANDS, CAYMAN ISLANDS, FALKLAND ISLANDS,
GIBRALTAR, MONTSERRAT, PITCAIRN, ST. HELENA, TURKS AND CAICOS ISLANDS.  Note that for
purposes of the diversity program only, Northern Ireland is treated  separately; Northern Ireland <u>does qualify</u>
and is listed among the qualifying areas.

EXHIBIT A
Gebre v. Rice 05-11321-WGY
U.S. Reply 5-19-2006

## NORTH AMERICA

BAHAMAS, THE

    (In North America, CANADA does <u>not</u> qualify for this year's diversity program.)

## OCEANIA

AUSTRALIA
  including components and
  dependent areas overseas
FIJI
KIRIBATI
MARSHALL ISLANDS
MICRONESIA, FEDERATED
  STATES OF
NAURU

NEW ZEALAND
  including components and
  dependent areas overseas
PALAU
PAPUA NEW GUINEA
SOLOMON ISLANDS
TONGA
TUVALU
VANUATU
WESTERN SAMOA

## SOUTH AMERICA, CENTRAL AMERICA, AND THE CARIBBEAN

ANTIGUA AND BARBUDA
ARGENTINA
BARBADOS
BELIZE
BOLIVIA
BRAZIL
CHILE
COSTA RICA
CUBA
DOMINICA
ECUADOR
GRENADA
GUATEMALA
GUYANA

HONDURAS
NICARAGUA
PANAMA
PARAGUAY
PERU
SAINT KITTS AND NEVIS
SAINT LUCIA
SAINT VINCENT AND
  THE GRENADINES
SURINAME
TRINIDAD AND TOBAGO
URUGUAY
VENEZUELA

    (Countries in this region which do <u>not</u> qualify for this year's diversity program:
      COLOMBIA, DOMINICAN REPUBLIC, EL SALVADOR, HAITI, JAMAICA, and MEXICO.)

CA/VO: August 1, 2000

EXHIBIT A

**SAMPLE ENTRY**

Gebre v. Rice 05-11321-WGY
U.S. Reply 5-19-2006

As stated on page 1 there is no specific format for the DV entry form.  The following is a sample form, but other formats may be used.  **SEE PAGE 2 OF THIS BULLETIN FOR SPECIFIC DETAILS/EXAMPLES OF HOW THIS (OR ANY OTHER) FORM SHOULD BE FILLED OUT..  Failure to provide all of the required information will disqualify the applicant.**

1.  **FULL NAME:**  _____          _____
                   LAST  (surname/family)                     FIRST

2.  **DATE OF BIRTH:**  _____
                 Day,  Month,  Year

    **PLACE OF BIRTH:**  _____
                  City/Town,  District/County/Province,  Country

3.  **APPLICANT'S NATIVE COUNTRY <u>IF DIFFERENT FROM COUNTRY OF BIRTH</u>:**

    _____
     (See "REQUIREMENTS" section on page 1 for more information on this item.)

4.  **NAME, DATE AND PLACE OF BIRTH OF THE APPLICANT'S SPOUSE AND CHILDREN (IF ANY)**

    _____          _____          _____
             Name                  Date of birth(day,month,year)                 Place of birth
    _____          _____          _____
             Name                  Date of birth(day,month,year)                 Place of birth
            **Attach  information on additional child(ren) as necessary.**

5.  **FULL MAILING ADDRESS:**  _____

    _____

    _____

    _____

    _____

6.  **PHOTOGRAPH:**  (Attach a recent, preferably less than 6 months old, photograph of the applicant, 1.5 inches (37 mm) square in size, with the applicant's name <u>printed</u> on the back. The photograph (not a photocopy) should be attached to the entry with clear tape--do **NOT** use staples or paperclips, which can jam the mail processing equipment.)

7.  **SIGNATURE:**  _____
            Failure to personally sign the entry will disqualify the applicant.

United States Department of State

*Washington, D.C.   20520*

I, Jeffrey Gorsky, hereby declare that:

1.  I am the Chief of the Legal Advisory Opinions Division of the Visa Office, Bureau of Consular Affairs, U.S. Department of State.  I have held this office since 1998. As part of my regular functions in this office I review and analyze State Department records relating to visa cases.  Also, as part of my official duties I regularly give legal guidance to Consular Officers on the adjudication of visa cases, including Diversity Visa ("DV") cases in Ethiopia.

2.  DV program applications are administratively processed by the Department of State's Kentucky Consular Center ("KCC").  The KCC is only an administrative processing center that has no adjudicative functions.  When the KCC receives forms from DV applicants, its responsibility is to hold the forms until they are substantially completed and can be forwarded to the overseas Consular Officer (if the case is to be visa processed) for adjudication.  It ceases processing of cases when the case is requested by a domestic office of the Department of Homeland Security, or when the applicant notifies KCC that the case is to be processed through adjustment of status for adjudication.

3.  According to KCC Diversity Immigrant Visa System ("DIVS") tracking data:

    a.  The KCC received Mr. Gebre's application between noon on Monday, October 2, 2000, and noon on Wednesday, November 1, 2000, which were the dates of the window for the DV-2002 lottery applications.

    b.  On March 14, 2001, Mr. Gebre was sent a letter notifying him of his selection in the DV lottery program for Fiscal Year 2002.

    c.  On June 14, 2001, the KCC received from Mr. Gebre the standard returned notification packet including completed and updated visa application forms reflecting that he had been married after his initial application for the DV lottery program.

    d.  The KCC electronic case file was updated in the computer database to reflect the new spouse on August 17, 2001.

    e.  Mr. Gebre had an immigrant visa appointment at the U.S. Embassy in Ethiopia scheduled for August 12, 2002.

    f.  In advance of the immigrant visa appointment, the KCC mailed the packet of forms submitted by Mr. Gebre to the U.S. Embassy in Addis Ababa, Ethiopia, by DHL on June 26, 2002.

4.  When the case was adjudicated on or about August 12, 2002, the Embassy noted on the Consolidated Consular Database that there was a problem with the case because the marriage was not recorded on Mr. Gebre's initial DV application (Exhibit B to my Declaration of April 14, 2006). The Consolidated Consular Database is the State Department computer database maintained by consular sections for imputing information related to visa adjudications. As a consequence,

5.  Ms. Tegeybelu's visa application was denied on August 13, 2002, and Mr. Gebre's was approved on August 20, 2002 (Exhibit B of my Declaration of April 14, 2006). There is no further indication on the database relating to the nature of the problem and the denial of Ms. Tegeybelu's visa application and, as stated in Paragraph 8 of my Declaration of April 14, 2006, I have affirmed with the U.S. Embassy in Addis Ababa, that there are no other records available relating to these individuals and their particular DV applications.

6.  There is a significant problem in Ethiopia with marriage fraud, and the authenticity of civil documents can not be presumed. This problem has been noted in the Embassy's reciprocity schedule, http://travel.state.gov/visa/reciprocity/Country%20Folder/E/Ethiopia.htm.

7.  Cases such as Mr. Gebre's, where a marriage takes place after the initial application and the notification of lottery selection is sent out, are suspect and subject to investigation at the Embassy. Limited resources at the Embassy and practical difficulties involved in traveling in Ethiopia make these investigations difficult to conduct and very time consuming.

8.  Because the full record in this case is no longer available it is impossible to determine the exact basis of the Embassy's action. However, given the application sequence of this case and after conferring with the U.S. Embassy in Addis Ababa, it is a logical assessment that the Embassy determined that an investigation of the marriage was necessary but could not be concluded in the few weeks remaining in the DV program fiscal year. Department of State records indicate that some 3,222

1       DV application and adjustment of status petitions from Ethiopia were processed for the

2       fiscal year 2002.  This would explain why the Embassy issued Mr. Gebre, the initial

3       and primary applicant, a visa but denied his derivative spouse's application.

4       Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true

5       and correct.

6       Executed by: _____ on: ___5/19/06___

7               Jeffrey Gorsky            May 19, 2006